

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-26-00002-CV

IN THE MATTER OF B.F.

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 1345DC, Honorable Patrick A. Pirtle, Presiding by Assignment

June 30, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and PRATT, JJ.

In Texas, the juvenile court exercises exclusive original jurisdiction over children accused of delinquent conduct.  The Family Code, however, recognizes a narrow set of circumstances in which that jurisdiction must yield to the criminal district court so that a child may stand trial as an adult.  The juvenile court here invoked that authority after the State petitioned to certify a fifteen-year-old to face capital murder charges arising from the deaths of his parents.

Appellant, B.F., a juvenile, appeals from the juvenile court's order waiving exclusive original jurisdiction and transferring his case to criminal district court.  He raises

two principal contentions on appeal: that the State's transfer petition required findings on both the seriousness of the offense and the background of the child, and that the evidence on the factors listed in Family Code § 54.02(f) does not support transfer. We affirm.

**BACKGROUND**

The events leading to this appeal began on the afternoon of April 17, 2025, when Appellant, then fifteen years old, argued with his parents. Despite being told not to leave the family home, Appellant left with his eighteen-year-old girlfriend. When Appellant returned about thirty minutes later, he encountered his parents again. His father allegedly pushed him against a wall and told him to stop backtalking his mother. Appellant left the house a second time, this time calling the police. Officers arrived, told Appellant to apologize to his parents, and left.

The argument continued later into the day over whether Appellant could keep his phone; he eventually surrendered it to his parents. Around 11:30 p.m., after both of his parents had gone to bed, Appellant retrieved a loaded .22 caliber pistol and entered his parents' bedroom.[1] After standing at his father's side of the bed for five to ten minutes, Appellant shot his father in the head. Although he believed the round may have also passed through his father's body and into his mother, Appellant then shot his mother in the head anyway.

The pistol jammed after the second shot. Appellant concealed the weapon under his mattress. He used each of his parents' phones to attempt to call his girlfriend without

---

[1] Appellant said he chose this gun because he thought any noise caused by retrieving one from the gun safe might wake the family.

2

success, then contacted a friend through Snapchat. That friend, whose father was a police officer, instructed Appellant to call 911. When officers arrived, Appellant told a story about an intruder who had entered through the back door, fired two shots, and fled. After initially declining to speak with officers and then talking with his paternal grandfather, Appellant eventually confessed to the killings during a recorded police interview.

The State filed a petition alleging Appellant engaged in delinquent conduct by intentionally and knowingly causing his parents' deaths with a firearm. The State then petitioned the juvenile court to waive jurisdiction and transfer the case to criminal district court. The transfer petition alleged that because of the seriousness of the offenses and the background of the child, the welfare of the community required waiver.

The juvenile court ordered the diagnostic study, social evaluation, and full investigation required by Section 54.02(d), including a psychological evaluation. *See* TEX. FAM. CODE § 54.02(d). Dr. Stephen Schneider conducted the evaluation. During his sessions with Dr. Schneider, Appellant gave several conflicting accounts of the shootings. In one, an unidentified man entered the house and killed his parents. In another, Appellant had paid an unknown man eighty dollars and supplied a firearm from his father's gun safe to commit the killings.

The juvenile court held an evidentiary hearing on the State's transfer motion. Dr. Schneider testified that Appellant had lower-than-average grades and intelligence but was capable of understanding right from wrong and assisting in his defense. He distinguished between maturity issues, which he described as the ability to make decisions whether good or bad, and psychopathology issues, placing Appellant in the

3

latter category. Appellant had been sent to a disciplinary alternative education program for vaping and had received corporal punishment at school. He exhibited hyperactivity, aggression, conduct problems, attention problems, learning problems, school problems, anger-control issues, emotional self-control issues, and executive functioning issues. His teachers described him as a persistent liar who became upset over small matters, such as the classroom temperature, schoolwork on his Chromebook, or being required to put his phone away. He had thrown fits and slammed his backpack on the floor.

Dr. Schneider further testified that Appellant presented a moderate to high risk of reoffending and that his characterological issues would require extended remediation. Although Appellant would receive good help at his current detention facility, Dr. Schneider said the treatment Appellant needed would extend beyond his nineteenth birthday. Before Appellant could safely return to the community, Dr. Schneider opined, he would need time to demonstrate, learn, and integrate compensatory strategies for his impulsivity and anger tendencies. Asked about Appellant's construction of alternative narratives, Dr. Schneider testified that such behavior indicated manipulation, which itself required a degree of maturity and sophistication.

A probation officer also testified she had discussed Appellant's background with his grandparents and sister, and that no one had identified any impairment that would render Appellant unable to discern right and wrong. Appellant's grandfather testified that Appellant had grown up hunting and understood the consequence of firing a firearm at a living thing. While in detention, Appellant had received no seclusions or restraints but had accumulated 315 time-outs in eight months, which the probation officer characterized as substantial.

4

Appellant called three witnesses. Dr. Mary Spence, a psychologist, testified that she disagreed with some of Dr. Schneider's opinions, though she had not met with Appellant. Dr. Spence acknowledged she lacked enough information to reach the same conclusions. Dr. Elissa Benedek, a psychiatrist, likewise had not interviewed Appellant and conceded she lacked information to determine whether Dr. Schneider's opinions were plausible. She testified that, based on a review of the records, including some not available to Dr. Schneider, she disagreed with Dr. Schneider's diagnoses.[2] Dr. Benedek agreed that Appellant understands right from wrong. Dr. Evan Norton, deputy executive director for the Texas Juvenile Justice Department, testified concerning programs available to juvenile offenders, including the capital offender program.

At the conclusion of the hearing, the juvenile court waived its jurisdiction and ordered the transfer to criminal district court. This appeal followed.

**ANALYSIS**

Appellate review of a juvenile transfer order proceeds in two steps. We examine the juvenile court's findings under Section 54.02(f) for evidentiary sufficiency. *In re D.L.T.*, No. 07-22-00277-CV, 2023 Tex. App. LEXIS 350, at *8 (Tex. App.—Amarillo Jan. 19, 2023, pet. denied). We also review the juvenile court's waiver decision for abused discretion. *Id*. A juvenile court abuses its discretion when it acts without reference to guiding rules or principles, such that its decision is essentially arbitrary in light of the evidence on which it was based. *Id.* As the sole factfinder, the juvenile court is free to

---

[2] As an example, Dr. Benedek testified she disagreed with the opinion that B.F. was dishonest, despite being presented with contrary education records. She replied she did not believe that Appellant's three conflicting stories about the shooting evidenced dishonesty.

5

believe or disbelieve any or all of the testimony. *Id*. at *10. No abuse of discretion occurs when the juvenile court's decision turns on conflicting evidence. *In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.).

Appellant concedes that probable cause supports the alleged offense and that the offense is one against persons. His remaining contentions are two: that the State's pleading required findings on both statutory bases for transfer, and that the evidence on the Section 54.02(f) factors does not support transfer. We address each in turn.

A. The State's Conjunctive Pleading

As part of the elements required to support a juvenile court's decision to waive jurisdiction, Family Code Section 54.02(a)(3) requires the juvenile court to find that "because of the seriousness of the offense alleged **or** the background of the child the welfare of the community requires criminal proceedings." TEX. FAM. CODE § 54.02(a)(3) (emphasis added). Because the statute is phrased in the disjunctive, the juvenile court may base its determination on either the seriousness of the offense or the background of the juvenile, and both grounds need not necessitate criminal proceedings. *Bell v. State*, 649 S.W.3d 867, 889–90 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). Here, however, the State's transfer petition alleged that "the seriousness of the offense[s] **and** the background of the child" required transfer. Appellant argues this binds the State to the duty to prove both statutory grounds.

The Texarkana Court of Appeals confronted the identical argument on materially indistinguishable facts in *In the Matter of K.B.H.*, 913 S.W.2d 684 (Tex. App.—Texarkana 1995, no writ). There, the State's petition alleged that "because of the seriousness of the

offense(s) and the background of the child, the welfare of the community requires" transfer. *Id.* at 688. The court rejected the contention that the State's choice of the conjunctive bound it to prove both elements, holding that the juvenile court did not abuse its discretion "by waiving jurisdiction by finding the community's welfare required transfer because of the crime's seriousness alone." *Id*.

We agree with the approach in *K.B.H.* The juvenile court is required to apply the standard the Legislature enacted, and Section 54.02(a)(3) supplies a disjunctive one. The State's choice to allege that Appellant committed both a serious offense and showed a sufficient background for waiver of juvenile jurisdiction did not modify the substantive criteria the juvenile court was required to apply. The juvenile court's order rested its welfare-of-the-community finding on the seriousness of the alleged offense, finding that, considering the seriousness of the alleged offense, the interests of the public could not be sufficiently protected if the child remained in the juvenile justice system. That finding satisfies the statute; therefore, the juvenile court did not abuse its discretion.

## B. The Section 54.02(f) Factors

Texas Family Code Section 54.02(f) directs the juvenile court, in deciding whether to transfer its jurisdiction, to consider four nonexclusive factors:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
>
> (2) the sophistication and maturity of the child;
>
> (3) the record and previous history of the child; and
>
> (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

TEX. FAM. CODE § 54.02(f). Any combination of the factors may be sufficient to support transfer. *In re D.L.T.*, 2023 Tex. App. LEXIS 350, at *8 (quoting *In re C.O.*, No. 02-21-00235-CV, 2021 Tex. App LEXIS 9982, at *11 (Tex. App.—Fort Worth Dec. 16, 2021, pet. denied)). The juvenile court need not find each factor established. *In re D.L.N.,* 930 S.W.2d 253, 258 (Tex. App.—Houston [14th Dist.] 1996, no writ).

*1. Crime Against Persons*

Because the alleged offense was against persons, the first factor weights this factor in favor of transfer, a point Appellant concedes. TEX. FAM. CODE § 54.02(f)(1).

*2. Sophistication and Maturity*

Next, we assess evidence of Appellant's sophistication and maturity. TEX. FAM. CODE § 54.02(f)(2). Two questions guide this inquiry: whether Appellant knows the seriousness of the charge against him, and whether he can assist counsel in his defense. *In re K.M.*, No. 12-25-00118-CV, 2026 Tex. App. LEXIS 1634, at *14 (Tex. App.—Tyler Feb. 18, 2026, no pet.); *In re J.A.T.*, No. 13-24-00575-CV, 2025 Tex. App. LEXIS 2037, at *11 (Tex. App.—Corpus Christi–Edinburg Mar. 27, 2025, no pet.); *In re A.F.*, No. 02-23-00457-CV, 2024 Tex. App. LEXIS 1305, at *13 (Tex. App.—Fort Worth Feb. 22, 2024, no pet.).

Appellant contends that evidence of his General Intellectual Ability score of 78, his Section 504 plan, his ADHD diagnosis, his below-grade-level reading skills, and his behavior while detained (including issues he discussed), demonstrate he lacks the sophistication and maturity for transfer. However, the entirety of the record supports a different conclusion. Both the State's and Appellant's experts agreed that Appellant's

8

below-average intelligence did not prevent him from understanding the pending charge or assisting his attorney in his defense. Dr. Schneider distinguished between maturity issues and psychopathology issues and placed Appellant in the latter category. Appellant's grandfather testified that Appellant had grown up hunting and understood the consequence of firing a firearm at a living thing. The probation officer's interviews with Appellant's grandparents and sister identified no impairment that would have rendered Appellant unaware of right and wrong. Appellant's own expert agreed that he knows right from wrong.

The record also contains evidence of concealment that supports a finding of sophistication and maturity. *Bell*, 649 S.W.3d at 893. Before the shootings, Appellant selected the firearm in his own bedroom rather than retrieve one from his father's gun safe because opening the safe risked waking his parents. He waited until he believed both parents were fully asleep before entering their bedroom. Afterward, he concealed the weapon beneath his mattress, attempted to call his girlfriend from each of his parents' phones, and supplied responding officers with a false intruder narrative. Appellant later offered Dr. Schneider other accounts of how the shooting occurred. Dr. Schneider testified that the construction of those alternative narratives indicated manipulation, which itself required some degree of maturity and sophistication.

While some of the evidence may suggest conflicting interpretations, we hold that under the proper application of the standard of review, the factor weighs in favor of transfer.

9

*3. Record and Previous History*

We consider the third factor, the Appellant's record and history. TEX. FAM. CODE § 54.02(f)(3). A juvenile court may consider both school disciplinary measures and rule infractions while the child is in juvenile detention following the alleged offense in determining whether the child's record and previous history weigh in favor of transfer. *Bell*, 649 S.W.3d at 895. Transfer may be warranted even when the matter is a child's first referral to the juvenile system. *Id*. at 895–96.

Appellant has no prior juvenile court history. His school records, however, show that he had been sent to a disciplinary alternative education program and received corporal punishment, and that he exhibited hyperactivity, aggression, and a range of conduct, attention, learning, and anger-control problems. Teachers described him as a persistent liar prone to outbursts over small matters. His detention record reflected no seclusions or restraints, but 315 time-outs over eight months, a substantial amount in the opinion of the probation officer. The evidence on this factor therefore weighs in favor of transfer.

*4. Protection of the Public and Likelihood of Rehabilitation*

The fourth statutory factor requires the juvenile court to evaluate two interrelated prospects: whether the public would be adequately protected, and whether the child could be rehabilitated through the procedures, services, and facilities available to the juvenile system. TEX. FAM. CODE § 54.02(f)(4). Some of the evidence under the fourth factor is in conflict.

Testimony showed that the juvenile system did not afford sufficient time for Appellant's rehabilitation. Dr. Schneider testified that Appellant presented a moderate to high risk of reoffending and that his characterological issues required extended remediation. Although the evidence suggested Appellant would receive good help at his current detention facility, the treatment he required would extend beyond his nineteenth birthday. Appellant would potentially be released before the time required to demonstrate and integrate strategies for managing his impulsivity and anger tendencies.

Appellant refers to other testimony. For example, Dr. Norton testified about the Texas Juvenile Justice Department's capital offender program, a six-to-nine-month program that Appellant might qualify to attend. The program is structured to begin at the end of a juvenile's minimum sentence, so (if Appellant qualified) he could complete core programming. Dr. Norton also acknowledged that mental health services exist within the Texas Department of Criminal Justice, though they differ from those in a juvenile setting. Appellant further argues that determinate sentencing would afford the public adequate protection without the need for transfer.

As the sole factfinder, however, the juvenile court was free to credit one set of opinions over the other. *In re J.A.T.*, 2025 Tex. App. LEXIS, at \*13. An abuse of discretion does not occur where the court resolves conflicting evidence one way rather than another. *In re B.N.F.*, 120 S.W.3d at 877. The evidence sufficiently supports the juvenile court's finding in favor of transfer.

11

Considered together with the seriousness of the alleged offenses against persons, the Section 54.02(f) factors support the juvenile court's exercise of discretion. We overrule B.F.'s issue.

## CONCLUSION

Having overruled B.F.'s issue, we affirm the juvenile court's order waiving jurisdiction.

Lawrence M. Doss
Justice